**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PATRICIA C., [1]

   Plaintiff,

   v.

LELAND DUDEK,[2]
Commissioner of Social Security,

   Defendant.

Case No. 2:23-cv-09195-MAA

**MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

## I. INTRODUCTION

On November 1, 2023, Plaintiff Patricia C. ("Plaintiff") filed a Complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Leland Dudek became Acting Commissioner of Social Security on February 17, 2025.  Under Federal Rule of Civil Procedure 25(d), he is automatically substituted for Kilolo Kijakazi as Defendant in this suit.

Security Act.  (Compl., ECF No. 1.)  Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge.  (ECF Nos. 5, 9.)  On January 2, 2024, Defendant filed an Answer (Answer, ECF No. 7) and Certified Administrative Record ("AR," ECF Nos. 7-1–7-15).  On March 25, 2024, Plaintiff filed a Brief.  (Pl.'s Br., ECF No. 13.)  On April 24, 2024, Defendant filed a Response Brief.  (Def.'s Br., ECF No. 15.)  On April 29, 2024, Plaintiff filed a Reply Brief.  (Pl.'s Reply Br., ECF No. 16.)  This matter is fully briefed and ready for decision.

The Court deems the matter appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons discussed below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

## II.    SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On September 7, 2017, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 23, 2016.  (AR 161–67.)[3]  The Commissioner denied this claim on December 19, 2017.  (AR 87–91.)  On January 23, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 94–95.)  On February 7, 2018, Plaintiff filed a Title XVI application for supplemental security income.  (AR 168–78.)

ALJ Deborah Van Vleck conducted a video teleconference hearing on January 20, 2020.  (AR 30–72.)  On March 9, 2020, ALJ Van Vleck issued an unfavorable decision finding Plaintiff "not disabled" at all relevant times, with the residual functional capacity to perform a wide range of light work.  (AR 12–29.)  Plaintiff appealed, but the Appeals Council denied her request for review.  (AR 1–

---

[3] Citations to the Administrative Record are to the AR number.  Pinpoint citations to other docketed documents are to the page numbers in the CM/ECF-generated headers.

2

1    6.)  Plaintiff filed a civil action in this Court on August 17, 2020, which the

2    undersigned remanded to the Social Security Administration for further proceedings

3    pursuant to the parties' joint stipulation for remand.  *Carrillo v. Saul*, Case No.

4    2:20-cv-07415-MAA (C.D. Cal. Apr. 1, 2021), ECF No. 15.

5           On remand, two additional hearings were held:  one on June 1, 2022 (AR

6    423–32) and one on March 27, 2023 (AR 433–68), both before ALJ Sally C.

7    Reason.  Over the course of the two hearings, the ALJ heard testimony from

8    Plaintiff, who was represented by counsel, from three impartial medical experts,

9    and from an impartial vocational expert.  (AR 423–68.)  Plaintiff testified at the

10   March 27, 2023 hearing.  (AR 448–460.)  On April 24, 2023, ALJ Reason, after

11   making the following findings under the Commissioner's five-step evaluation

12   process, issued a decision finding that Plaintiff was not disabled.  (AR 407–417.)

13          At step one, the ALJ found that Plaintiff had not engaged in substantial

14   gainful activity since December 23, 2016.  (AR 410 ¶ 2.)  At step two, the ALJ

15   found that Plaintiff had the following severe impairments:  "degenerative disc

16   disease of the lumbar spine, status-post laminectomy and spinal stimulator

17   implantation."  (AR 410 ¶ 3.)  At step three, the ALJ found that Plaintiff did not

18   have an impairment or combination of impairments that met or medically equaled

19   the severity of one of the agency's listed impairments.  (AR 412 ¶ 4.)  Next, the

20   ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC"):

21              [T]he claimant has the residual functional capacity to
22              perform light work as defined in 20 CFR 404.1567(b)
                and 416.967(b) with the following additional limitations:
23              she can frequently use her feet for pushing and/or
24              pulling; she can frequently climb stairs, balance, and
                kneel; she can only occasionally stoop, crouch, and
25              crawl, and climb ladders, ropes, and scaffolds; and she
26              can only occasionally work at unprotected heights and
                around heavy machinery.
27

28   (AR 412 ¶ 5.)

3

At step four, the ALJ found that Plaintiff was able to perform past relevant work "as a manager, fast-food services." (AR 416 ¶ 6.)  The ALJ concluded Plaintiff had "not been under a disability, as defined by the Social Security Act, from December 23, 2016," the alleged onset date, through April 24, 2023, the date of the ALJ's decision.  (*Id.* ¶ 7.)  Plaintiff filed written exceptions with the Appeals Council, which declined to assume jurisdiction on September 19, 2023.  (*See* Pl.'s Br. 2; Def.'s Br. 6.)

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's "decision to deny benefits . . . 'is not supported by substantial evidence or is based on legal error.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1035).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  "If the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

1  **IV.   DISCUSSION**

2      **A.   Disputed Issues**

3      Plaintiff raises two disputed issues:

4      1.      Whether the ALJ committed reversible error by failing to articulate

5              specific, clear, and convincing reasons for rejecting plaintiff's

6              subjective symptom testimony.

7      2.      Whether the ALJ committed reversible error by failing to evaluate

8              plaintiff's work-related abilities on a function-by-function basis in

9              assessing the residual functional capacity.

10  (Pl.'s Br. 2.)

11      For the reasons discussed below, the Court finds that reversal and remand for

12  further administrative proceedings are warranted for Issue One, based on the ALJ's

13  failure to articulate specific, clear, and convincing reasons for rejecting plaintiff's

14  subjective symptom testimony.  Having found that remand is warranted, the Court

15  declines to address Plaintiff's remaining argument.  *See Hiler v. Astrue*, 687 F.3d

16  1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the

17  reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see*

18  *also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal.

19  2008) ("[The] Court need not address the other claims plaintiff raises, none of

20  which would provide plaintiff with any further relief than granted, and all of which

21  can be addressed on remand.").

22

23      **B.   Applicable Law**

24      When assessing a claimant's credibility regarding subjective symptom

25  testimony or allegations, the ALJ must engage in a two-step analysis.  *Trevizo v.*

26  *Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  "First, the ALJ must determine

27  whether the claimant has presented objective medical evidence of an underlying

28  impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Garrison*, 759 F.3d at 1014 (quoting *Lingenfelter*, 504 F.3d at 1035–36). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Id*. (quoting *Smolen*, 80 F.3d at 1282).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. *Id*. at 1014–15; *see also Robbins*, 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). The ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the claimant's] ability to perform work-related activities for an adult . . . ." Social Security Ruling 16-3p, 2016 SSR LEXIS 4, at *4 (Mar. 16, 2016).

While the ALJ cannot "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," *Trevizo*, 871 F.3d at 678 n.5, the ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; . . . unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and . . . the claimant's daily activities," *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the

claimant's testimony, also may be relevant. *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014). In addition, the ALJ may consider "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms . . . ." *Smolen*, 80 F.3d at 1284. However, it is improper for an ALJ to reject subjective testimony based "'solely on a lack of objective medical evidence to fully corroborate' the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)).

The ALJ must make "a credibility determination with findings that are sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" (quoting *Bunnell*, 947 F.2d at 345–46)). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

### C.    Background

Plaintiff is 59 years old. (AR 73.) She was 51 on the alleged onset date and 56 years old on the date last insured. (*Id.*) She has a tenth-grade education. (AR 41, 449.) From 2000 to 2016, Plaintiff worked at multiple locations of the fast-food chain restaurant, Subway; she baked bread, did inventory, interacted with

customers, cleaned, made sandwiches, supervised other employees, and lifted 25-pound boxes of syrup for the soda.  (AR 449–50, 453–56.)  She was on her feet all day long.  (AR 450.)  She stopped working because of back pain that radiated into her legs.  (AR 450–51.)

An MRI in September 2016 showed that Plaintiff had degenerative joint disease at L2-3 and L4-5, with severe foraminal stenosis and a right synovial cyst at L5-S1 on the right side.  (AR 268.)  Plaintiff's pain management physician, Dr. Magued Fadly, referred her to Dr. Anthony Virella, who performed lumbar laminectomy surgery at L4 and L5 on December 30, 2016.  (AR 266; 270–71.)  Dr. Virella's report indicates that the procedure included a "difficult dissection," that there was "severe compression" of the discs "out laterally," "severe lateral recess stenosis," and "severe scarring [that] required tedious neurosurgical dissection."  (AR 271.)

About four months later, in April 2017, Dr. Virella noted that Plaintiff was "still in a considerable amount of low back pain with neurogenic claudication" and had "failed conservative care."  (AR 269.)  An MRI showed L2-3 and L3-4 stenosis and scarring where the L4-5 laminectomy had been performed.  (*Id*.)  Dr. Virella recommended performing a "meniscectomy L2-3, L3-4 with redo exploration of previous laminectomy at L4-5 and scar dissection."  (*Id*.)  Plaintiff was warned of specific risks of the surgery including bleeding, infection, cerebrospinal fluid leak, failure to cure, no improvement in symptoms, and nerve root injury.  (*Id*.)  However, Plaintiff was unsure if she wanted to go through with the procedure (AR 290), and no medical records have been presented to suggest that she ever had a second procedure with Dr. Virella.

From October 2017 through September 2018, Plaintiff received multiple epidural steroid injections in different areas of her back, including in her tailbone (AR 759, 764, 769), sacroiliac joints (AR 760, 762, 767–68), and lumbar spine (AR 754–58, 761, 763, 765–66).  Despite these, Plaintiff continued to have lower back

8

pain into 2018.  (*See, e.g.*, AR 316, 318, 322.)  To treat the continuing pain, Dr. Fadly implanted the leads for a spinal cord stimulator on December 14, 2018 and implanted the device on December 31, 2018.  (AR 751–52.)  Plaintiff also continued with her epidural steroid injection treatment regimen.  (AR 750, 753.)

Plaintiff testified that at some point, her primary care physician expressed concern about the number of epidural shots Plaintiff was receiving, so she stopped getting them.  (AR 457.)  Even the ALJ remarked that she had "never seen so many" epidural shots.  (*Id.*)  Plaintiff also testified that she lost medical insurance around 2021, which was another reason she stopped going to see Dr. Fadly.  (AR 458.)  She also stopped taking oxycodone when she lost her insurance.  (AR 459–60.)

Plaintiff testified that she cannot stand for long—"maybe not even an hour"—at a time.  (AR 55.)  She can walk for only 15 minutes and then has to stop for 10–20 minutes.  (*Id.*)  Sitting causes her pain, and she can only sit for about 30 minutes at a time.  (*Id.*)  The most she can lift is a bag with a few groceries that she estimates weighs less than 10 pounds.  (AR 56.)  She does not believe that she would be able to perform her previous job, since "I can't stand too long and I can't sit too long because of my back.  And the pain goes through my waist all the way do[wn]to my feet."  (AR 51.)

### D.    Analysis

At the first step of the two-step evaluation, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 413.)  At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id.*)  As the ALJ found no evidence of malingering, she was required to provide specific, clear and

1   convincing reasons for rejecting Plaintiff's subjective symptom statements.  *See*

2   *Garrison*, 759 F.3d at 1014–15.  The Court may review only those reasons that the

3   ALJ specifically cited as grounds to reject Plaintiff's subjective symptom

4   testimony.  *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are

5   constrained to review the reasons the ALJ asserts."); *Garrison*, 759 F.3d at 1010

6   ("We review only the reasons provided by the ALJ in the disability determination

7   and may not affirm the ALJ on a ground upon which he did not rely.").

8       Plaintiff argues that the ALJ completely failed to identify any of her

9   testimony or statements as not credible and asserts that this is reversible error.

10  (Pl.'s Br. 5; Pl.'s Reply 1.)  Defendant, on the other hand, argues that the ALJ

11  "reasonably discounted" Plaintiff's subjective statements on the following grounds:

12  (1) "conflicts between Plaintiff's statements and those of the medical sources"

13  (Def.'s Br. 12); (2) Plaintiff's treatment history and gaps in her treating regimen (*id.*

14  at 15–17); and, primarily, (3) the objective medical evidence (*id.* at 9–12).

15      The Court agrees with Plaintiff that the ALJ did not explicitly discount

16  Plaintiff's testimony about her subjective symptoms.  In conducting the two-step

17  evaluation process, the ALJ identified only two sources in which Plaintiff described

18  her symptoms:  an Exertion Questionnaire submitted in support of her applications

19  and Plaintiff's testimony at the March 2023 hearing.  (AR 413.)  The ALJ did not

20  mention Plaintiff's testimony at the January 2020 hearing.  (*See* AR  413–16.)  Nor

21  did the ALJ explicitly state that she found either of the two sources that were

22  identified not to be credible.

23      After summarizing the symptoms discussed in the two identified sources, the

24  ALJ recited the essentially boilerplate, second-step conclusion that Plaintiff's

25  "statements concerning the intensity, persistence and limiting effects of these

26  symptoms are not entirely consistent with the medical evidence and other evidence

27  in the record for the reasons explained in this decision."  (*Id.*)  Thereafter, the ALJ

28  simply summarized the medical evidence of record related to Plaintiff's health

issues from 2016 through 2022, along with the medical opinion evidence, without further mention of Plaintiff's subjective symptom testimony or reports. (*See* AR 413–16.) A mere summary of the medical evidence, however, is not the same as providing specific, clear and convincing reasons for discounting Plaintiff's testimony. *See Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) ("[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (quoting *Brown-Hunter*, 806 F.3d at 494)).

Defendant cites *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022), for the proposition that the ALJ does not need to address all of Plaintiff's statements, line-by-line, but merely needs to "show his work." (Def.'s Br. 8, 11.) The Court does not disagree with this proposition. However, the ALJ here did not "show [her] work," as did the ALJ in the *Smartt* case. There, the ALJ explicitly "identified a direct contradiction in [the claimant's] testimony" as well as "specific discrepancies between [the claimant's] testimony and the objective medical evidence." *Smartt*, 53 F.4th at 497–98. Here, the ALJ did not explicitly identify any such contradiction or discrepancy. Thus, the ALJ's opinion lacks the necessary showing and does not include "a credibility determination with findings that are sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." *Tommasetti*, 533 F.3d at 1039.

It is well-settled that a reviewing court may not construe an ALJ's general findings from the medical record as reasons to reject a claimant's subjective symptom testimony if the ALJ does not explicitly tie such findings to the testimony. *See Burrell*, 775 F.3d at 1139 (rejecting the government's argument that claimant's history of treatment for headaches is a specific, clear, and convincing reason to support the ALJ's credibility finding because "[a]lthough the ALJ made findings . . . concerning [c]laimant's treatment for headaches, he never stated that he rested his adverse credibility determination on those findings"); *Potter v. Comm'r of Soc.*

1   *Sec.*, 571 F. App'x 569, 572 (9th Cir. 2014) ("Problematically, the ALJ did not

2   clearly tie [the claimant's] failure to pursue the [treatment] to his credibility.").

3   Accordingly, none of the reasons advanced by Defendant can constitute a specific,

4   clear and convincing reason supported by substantial evidence for discounting

5   Plaintiff's subjective symptom testimony.

6        Further, even if the Court could look past the ALJ's failure to make an

7   explicit credibility finding and to tie that finding to specific evidence, the reasons

8   offered by Defendant as support for the ALJ's decision are not legally sufficient to

9   discount Plaintiff's subjective symptom testimony.  Each of these reasons is

10  discussed below.

11

12              a.    *Conflicts Between Plaintiff's Statements and Those of the*

13                    *Medical Sources*

14       Defendant argues that the ALJ "reasonably relied on 'other' important

15  evidence to conclude that Plaintiff's subjective complaints were not consistent with

16  her claim of disability. . . . For instance, the ALJ properly considered the conflicts

17  between Plaintiff's statements and those of the medical sources."  (Def.'s Br. 12.)

18  However, Defendant never provides any concrete examples.  The following

19  sentence of Defendant's brief reads, "[f]or instance, the ALJ rejected the assessment

20  of Dr. Fadley [sic] who stated that Plaintiff would be unable to sit or stand for 'a

21  long period of time' as this would cause flare ups."  (*Id.* at 13.)  This is an example

22  of a medical source that is *consistent* with Plaintiff's statements, not one that shows

23  a conflict with any of Plaintiff's statements.  Defendant then proceeds to discuss the

24  opinions provided by various medical experts and why the ALJ found some more

25  credible than others.  (*Id.* at 13–14.)  While Defendant points to conflicts between

26  experts, and conflicts between experts and the medical record, there is no mention

27  of any conflict with Plaintiff's statements.  In fact, Plaintiff's "subjective

28  complaints" are simply not discussed.

12

1    Reviewing the ALJ's opinion, the closest the Court can find to any mention
2    of an inconsistency between Plaintiff's statements and the medical sources are
3    references to Plaintiff's use of a cane.  At the March 2023 hearing, the ALJ brought
4    up the fact that Plaintiff "came in with a cane."  (AR 457.)  Plaintiff testified that
5    the cane had not been prescribed by a doctor, and that she had bought it herself and
6    only started using it about six months prior to the hearing.  (AR 457–58.)  She did
7    not testify that she was unable to walk without the cane, just that she found it
8    helpful, stating that it "helps me to stand because . . . it takes me awhile when I get
9    up. . . . for me to get ready to walk."[4]  (AR 457.)  The ALJ asked if the cane
10   "help[ed] with stiffness," and Plaintiff replied, "[y]es."  (AR 458.)  The ALJ's
11   opinion notes that Plaintiff "testified that she started using a cane about six months
12   ago" and that "she purchased the cane on her own."  (AR 413.)

13   The opinion also notes that the examining orthopedist, Dr. J. Chuang, who
14   examined Plaintiff on July 8, 2022, noted that Plaintiff "reported using a straight
15   cane for long-distance walking beyond 50 feet."  (AR 414.)  The ALJ went on to
16   summarize Dr. Chuang's observations of Plaintiff as "able to walk without the cane,
17   though she reportedly exhibited slow swing and stance phases and had difficulty
18   heel-toe walking, squatting, and rising."  (AR 414–15.)  Dr. Chuang's report states
19   that Plaintiff was "able to walk a short distance" without the cane, though she
20   walked "with a mild limp and antalgia."  (AR 737.)  The ALJ, however, found that
21   Dr. Chuang's opinion was generally not persuasive, and noted that "the other
22   medical records in this case show no indication that the claimant has required a
23   cane," especially "the recent chiropractic treatment records" documenting
24   ///

25

26   _____
     [4] The Court notes that this is consistent with Plaintiff's testimony three years earlier,
27   when, though she was not using a cane at that time, she testified that "it's hard for
     me to stand up and start walking.  I have to, like, stand up and wait for a little bit, and
28   then start walking."  (AR 67.)

Plaintiff's "chiropractic treatment spann[ing] the period from April 2022 to August 2022." (AR 415.)

The Court notes, initially, that Plaintiff's chiropractic treatment actually ended on July 11, 2022, as the one record with an August 2022 date is a summary of her treatment written after the fact. (*See* AR 785 ("Patricia was treated in this office from April 4, 2022 to July 11, 2022.").) July 11, 2022 was around the same time that Plaintiff was seen by Dr. Chuang, so it is likely that Plaintiff's cane use started before her chiropractic treatment ended. But while it is true that there is no mention of her cane use in those records, there is nothing inconsistent with such use, either. There is only a single document in the record from that treatment in a format that could have included any reference to the use of a cane or other mobility device—the summary of her care dated August 10, 2022, written a month after her treatment ceased. (AR 782–86.) While it is conceivable that this record could have included a reference to Plaintiff's use—or lack of use—of a cane, the topic is simply not addressed, one way or the other. As to the fact that no other medical records mention Plaintiff's use of a cane, all other records presented pre-date the period when Plaintiff testified she began using the cane, so the lack of references to such a device are hardly inconsistent with her testimony.

Even if the medical sources had been obviously inconsistent with Plaintiff's testimony about her cane use, however, the fact remains that the ALJ did not actually state that she found Plaintiff's entire testimony not to be credible because of such an inconsistency. The Court would be required to assume that, because the ALJ viewed the medical sources as inconsistent with Plaintiff's testimony regarding her cane use, the ALJ found that Plaintiff's testimony regarding her symptoms was, in general, not credible. This is not "sufficiently specific" to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony regarding pain. *See Brown-Hunter*, 806 F.3d at 493.

14

b.    *Documented Treatment and Gaps in Treatment*

Defendant states that the "ALJ also reasonably considered Plaintiff['s] treatment history," and notes that "[g]aps in a claimant's treating regimen may serve as another . . . clear and convincing reason for rejecting a claimant's symptom severity." (Def.'s Br. 15.)

A claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a factor that "can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, an ALJ also must "consider and address reasons for not pursuing treatment that are pertinent to an individual's case." SSR 16-3P, 2016 SSR LEXIS 4, at *25. "Disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn*, 495 F.3d at 638 (citation omitted). In *Orn*, the Ninth Circuit determined the claimant's failure to receive medical treatment during the period that he had no medical insurance could not support an adverse credibility finding. *Id*.

Here, Defendant points to the fact that the ALJ "observed that Plaintiff had back surgery in December 2016," but "did not proceed with exploratory surgery." (Def.'s Br. 15.) This appears to relate to the records of Dr. Anthony Virella, who performed Plaintiff's lumbar laminectomy surgery on December 30, 2016. (AR 270–71.) Dr. Virella's records reflect that about four months after this surgery, in April 2017, Plaintiff was "still in a considerable amount of low back pain" and had "failed conservative care." (AR 269.) Dr. Virella recommended performing another surgery. (*Id*.) However, Plaintiff reported being unsure whether she wanted to go through with the procedure (AR 290), and there is no evidence to suggest that she underwent a second procedure with Dr. Virella. The ALJ's opinion implies, but does not explicitly state, that the ALJ found the lack of evidence of a second surgery with Dr. Virella to cast doubt on Plaintiff's testimony that she had two surgeries. (*See* AR 414 ("Although the claimant testified at the hearing that she

15

underwent two spinal surgeries, there is no operative report in the file documenting a second surgery in 2017.").)  However, while Plaintiff was clearly confused at the hearing about the exact procedures she had had, she did testify that she believed the implantation of the spinal stimulator (by Dr. Fadly in December 2018) was the second of the two surgical procedures she had undergone.  (AR 452.)  Her testimony that she had two back surgeries is therefore not inconsistent with the medical record:  she had the lumbar laminectomy surgery with Dr. Virella in December 2016 (AR 270–71) and the spinal cord stimulator implant with Dr. Fadly in December 2018 (AR 751–52).

Defendant also points to the fact that Plaintiff stopped receiving epidural injections in 2019.  (Def.'s Br. 16.)  However, Plaintiff testified that her primary care doctor had warned her that "it was not too good to have all these epidural shots."  (AR 457.) The ALJ herself "noted, with some concern, I don't think I've ever seen so many epidurals administered for an individual."  (AR 443.)  Defendant cannot mean to argue that a claimant must choose between following a doctor's advice to discontinue a potentially dangerous treatment or persisting with that treatment against medical advice in order to obtain benefits.

Defendant also notes that Plaintiff testified she stopped taking oxycodone when she lost her health insurance and could not afford to pay out-of-pocket for the prescription.  (Def.'s Br. 16; see AR 459–60.)  However, the ALJ's opinion contains no reference either to the fact that Plaintiff ever took oxycodone or to the fact that she stopped taking it.  (*See generally* AR 413–16.)  Perhaps Defendant's reference to the fact that Plaintiff stopped taking the drug is intended to bolster the ALJ's conclusion that there was "no evidence of additional invasive procedures or further specialized treatment" after early 2019.  (AR 414.)  However, while Defendant mentions and attempts to rebut the impact of Plaintiff's testimony that she had lost her health insurance for some time (*see* Def.'s Br. 15–16), the ALJ did not acknowledge or address this fact, whether in reference to Plaintiff's medication

use, the cessation of epidural injections, or Plaintiff's decision not to undergo a second risky, "exploratory" surgery with Dr. Virella in 2017 that might not have been any more successful than the previous procedure. (*See generally* AR 413–16.) The ALJ therefore did not "consider and address [Plaintiff's] reasons for not pursuing treatment" as required. SSR 16-3P, 2016 SSR LEXIS 4, at *25. Further, to the extent Plaintiff's treatment decisions were based on her lack of insurance and inability to pay out-of-pocket, "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn*, 495 F.3d at 638 (citation omitted).

### c.    *Objective Medical Evidence*

Finally, Defendant contends that the ALJ "found that the objective medical evidence undercut Plaintiff's allegations of disabling symptoms and limitations." (Def.'s Br. 9.) It is unquestionably true that an ALJ may consider whether a claimant's subjective symptoms are supported by objective medical evidence, and that an ALJ may reject a claimant's subjective testimony if it is inconsistent with the objective medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). However, while an ALJ may consider lack of medical evidence when analyzing Plaintiff's subjective allegations, "lack of medical evidence cannot form the sole basis for discounting pain testimony." *Burch*, 400 F.3d at 681; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); *Bunnell*, 947 F.2d at 345 ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."); *Robbins*, 466 F.3d at 883 ("While an ALJ may find testimony not credible in part or in whole, he or she may not

disregard it solely because it is not substantiated affirmatively by objective medical evidence.").

Here, again, the ALJ's opinion only implicitly finds that Plaintiff's subjective statements are not credible when compared to the medical evidence.  Explicitly, the ALJ notes that "[t]he progress notes obtained from her primary care physician, Dr. Xu, reflect only occasional mentions of back pain and do not reflect any abnormal clinical findings related to her spinal condition."  (AR 414.)  In fact, of the twenty-six office visits to Dr. Xu reflected in the records produced, twenty-four of them contain a reference to one or more of the following:  (1) a diagnosis of lumbago, (2) reports of back pain, (3) mention of an oxycodone prescription; or (4) reference to Plaintiff's ongoing treatment by a pain management specialist.  (AR 302–55; AR 728–29.)  Of the two visit notes that do not include such a reference, one is from March 22, 2016, nine months before Plaintiff stopped working (AR 354–55), and one is a pre-operative visit focused on whether Plaintiff was cleared for hernia surgery in September 2019 (AR 302–03).  Dr. Xu's records therefore do not appear to be in conflict with Plaintiff's subjective symptom testimony.

The ALJ also notes that Plaintiff "did not exhibit any serious clinical deficits" when examined by a consulting orthopedist in November 2017, that her car accident in March 2022 did not appear to have "caused a chronic worsening of [Plaintiff's] back impairment," and that Plaintiff did not "exhibit serious deficits in connection with an updated orthopedic consultative examination performed . . . in July 2022."  (AR 414.)  In fact, this last item, the July 2022 consulting examination, did include some abnormal findings.  The ALJ noted that, during this examination, Plaintiff:

> reportedly exhibited slow swing and stance phases and had difficulty heel-toe walking, squatting, and rising. Additionally, Dr. Chuang found the claimant to have paraspinal tenderness, decreased range of motion of the back, and positive straight leg raising tests bilaterally. A neurologic examination reportedly revealed mild weakness (4+/5) in the bilateral lower extremities, normal

18

motor strength in the bilateral upper extremities, and
decreased sensation in the bilateral L4 to S1 dermatomes.

(AR 414–15.)  Again, this is not inconsistent with Plaintiff's subjective symptom
testimony.

At most, the objective medical evidence cited by the ALJ shows that some
records do not provide affirmative support for Plaintiff's symptoms.  No records
discussed are particularly inconsistent with those symptoms.  Thus, despite
Defendant's contention that the ALJ "found that the objective medical evidence
undercut Plaintiff's allegations of disabling symptoms and limitations" (Def.'s Br.
9), the ALJ's opinion relies on the lack of affirmative support rather than the
presence of directly contradictory evidence.  But even assuming the record supports
the ALJ's reasoning regarding the lack of support from objective medical evidence,
the ALJ did not identify any other clear and convincing reason, supported by
substantial evidence, to discount Plaintiff's subjective symptom statements.
Standing alone, the purported lack of support from objective medical evidence is
not a legally sufficient reason to discount Plaintiff's symptom testimony.

* * *

The subjective symptom evaluation standard requires that an ALJ "show his
work." *Smartt*, 53 F.4th at 499.  In this instance, the ALJ did not provide the "sort
of explanation or the kind of 'specific reasons' we must have in order to review the
ALJ's decision meaningfully, so that we may ensure that the claimant's testimony
was not arbitrarily discredited," nor can the error be found harmless.  *Brown-
Hunter*, 806 F.3d at 494.  Because Plaintiff's subjective symptom testimony was
not rejected for clear and convincing reasons based on substantial evidence,
reversal is warranted.

///

///

19

### E.    Remand for Further Proceedings

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *See id*. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *See McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Specifically, remand is warranted here for reconsideration of Plaintiff's symptom statements regarding her back pain because the ALJ's failure to provide legally sufficient reasons for discounting such statements in the decision prevents this Court from meaningfully determining whether the decision is supported by substantial evidence. *See Treichler*, 775 F.3d at 1103 ("Because 'the agency's path' cannot 'reasonably be discerned,' we must reverse the district court's decision to the extent it affirmed the ALJ's credibility determination." (citation omitted)).

## V.    ORDER

The Court **ORDERS** that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

**IT IS SO ORDERED.**

DATED: February 21, 2025    _____

HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE